UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL GLADLE,

                Plaintiff,

        -against-                                 5:11-CV-0991 (LEK)

CAROLYN W. COLVIN, acting
Commissioner of Social Security,

                Defendant.

_____

## DECISION and ORDER

### I. INTRODUCTION

This Social Security appeal is before the Court following a final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff benefits. Both parties have filed briefs. Dkt. Nos. 14 ("Plaintiff's Brief"); 15 ("Defendant's Brief"). For the reasons discussed below, the case is remanded to the SSA to: (1) further develop the administrative record; and (2) reevaluate Plaintiff's claim under the correct legal standard.

### II. BACKGROUND

#### A. Factual History

Michael A. Gladle ("Claimant") has an eleventh-grade education and a history of seizures dating back to February 22, 1996. Dkt. Nos. 9-6 at 13; 9-7 at 79. Claimant held various jobs until January 1, 2005, when he claims he became disabled by his seizure disorder. Dkt. No. 9-2 at 21. On May 17, 2006, Claimant underwent an electroencephalogram ("EEG"), which showed "occasional short burst of 1-2 seconds of spike and polyspike-and-sharp wave activity seen for both hemispheres." Dkt. No. 9-7 at 15. On June 14, 2006, Claimant was prescribed Dilantin for

continued seizure activity. Id. at 41. On July 23, 2006, Claimant went to the emergency room complaining of seizure and a related head injury. Id. at 89. Claimant visited the emergency room again on August 22, 2007, complaining of seizure, id. at 85, and again on July 10, 2008, at which time he reported that he took no medication and had "normal" neurological exam results. Id. at 2. During Claimant's July 10 visit he was also treated for burns to his face, leg, and hand that were sustained during a seizure while holding a cup of hot coffee. Id.

On July 15, 2008, Claimant followed up with his new treating physician, Brian Chase at Family Practice Center, and indicated his seizures had been occurring with increasing frequency. Id. at 6. On August 21, 2008 Claimant was interviewed by F. Topintzis of the SSA, who noted Claimant's statement that he has been "scared and embarrassed by his condition." Dkt. No. 9-6 at 4. Claimant followed up with Dr. Chase again on September 9, 2008, at which time he indicated that he was not taking his Dilantin because it was too expensive. Dkt. No. 9-7 at 47. Plaintiff returned to Dr. Chase on October 22, 2008, and his Dilantin dosage was adjusted. Id. at 49. Claimant consulted with Dr. Sandra Boehlert regarding his claim for disability benefits on October 28, 2008. Id. at 16. During this consultation, Claimant indicated that he had suffered his most recent seizure two days prior and, as a result, had fallen in the bathtub and injured his back. Id. Dr. Boehlert indicated that Claimant should not drive, use heavy machinery, or work at heights, but that his primary care physician indicated that he should continue working. Id. Dr. Boehlert observed that Claimant has a normal gait, full range of motion in his upper and lower extremities, no strength limitation, good manual dexterity and full grip strength. Id. Additionally, Dr. Boehlert noted that Claimant's blood phenytoin level was low at 3.3mg/ml. Id. at 19. This fact was re-iterated by Dr. Husain in a November 10, 2008, report. Id. at 27. Dr. Husain stated, "Claimant is on Dilantin 300

2

mg po tid which is a large dose or there is a mistake in writing; drug level is subtherapeutic . . . ." Id.

On November 10, 2008, Claimant returned to Dr. Chase for another follow up, and stated he had been taking Dilantin at the prescribed dosage three times a day. Id. at 51. Claimant relayed that he does not remember his seizures, but feels confused and tired and suffers from muscle strain and aches afterward. Id. Dr. Chase indicated that Claimant had full strength and was neurologically intact, and that he would likely increase the medication levels for Dilantin from its already high dose. Id. at 27, 51.

On December 10, 2008, Claimant reported having between seven and eight seizures in the preceding month, and that the Dilantin makes him "very tired." Id. at 52. Dr. Chase prescribed Claimant Trileptal instead. Id. at 53. During this consultation, Claimant was negative for aphasia and focal weakness. Id. On March 4, 2009, Claimant saw Dr. Chase again, and indicated that, following the change in medication, he had been feeling well, but that because the Trileptal irritated his stomach, he had switched back to Dilantin at a lower dose. Id. at 54. Claimant indicated he was seizure free since restarting Dilantin. Id. Dr. Chase indicated that Claimant was well controlled on Dilantin, but suspected his blood levels were subtherapeutic. Id. at 55.

On August 27, 2009, Claimant was treated by Dr. Wight of Family Medicine Center. Id. at 57. Claimant reported that he had been depressed for a period of eight months and would like to seek counseling. Id. Claimant also informed Dr. Wight he had one seizure in the previous month. Id. On December 2, 2009, Claimant saw Dr. Wight again and indicated that he was having two or three seizures a week, and that he had always had them at a higher frequency than the once a month he had previously indicated. Id. at 60.

3

On December 3, 2009, Dr. Wight completed a medical source statement indicating that Claimant had a seizure disorder and was experiencing seizures, on average, six times per month. Id. at 111. She indicated that Claimant does not always have warning of an impending seizure, and his post-seizure symptoms include confusion, exhaustion, headaches, muscle strain, and irritability. Id. at 111-12. Further, Dr. Wight stated that doctors had been unable to balance controlling Claimant's seizures and keeping the side effects of medication manageable. Id. Dr. Wight opined that Claimant would require more supervision than an unimpaired worker; his seizures were likely to disrupt coworkers; and his impairment precluded him from working at heights, using power machines that would require an alert operator, operating a motor vehicle, or taking a bus alone. Id. Dr. Wight also indicated that Claimant has memory problems associated with his impairment and treatment and was likely to be absent from work more than four days per month, although the number and timing of days would be unpredictable. Id.

On December 15, 2009, Claimant began treatment for his mental impairment at Arise Child & Family Services. Id. at 121. He indicated that he had just started taking Celexa once a day. Id. His provider indicated that he had a depressed mood, impaired recent memory, and some impairment in cognitive function and judgment, and recommended he receive individual counseling once a week. Id. at 123.

An EEG administered on December 22, 2009, indicated that Claimant had "some bursts of sharp activities" in all regions, which could indicate a predisposition to clinical seizures. Id. at 116. On December 30, 2009, Claimant was treated by Dr. Marc Iqbal, who indicates that Claimant was taking his medication, but still reported he was having seizures up to two times per week. Id. at 137. Claimant also reported he was depressed, had difficulty interacting socially, and was

4

experiencing sleep problems. Id. Claimant indicated he had been taking 200mg of Dilantin twice a day, as directed, but that he had discontinued Celexa because of side effects. Id.

On January 28, 2010, Claimant saw Dr. Iqbal once again, reported having two or three seizures in the prior three to four weeks, and was diagnosed with unspecified epilepsy and depressive disorder. Id. at 133. On March 25, 2010, Dr. Iqbal noted that Claimant was attempting to have his medical insurance cover a visit to a neurologist. Id. at 131. Dr. Iqbal reported Claimant's seizures continued to occur up to two times per week. Id. At a follow-up appointment on June 23, 2010, Claimant was once again treated for seizures. Id. at 130.

On January 4, 2011, a medical source statement was completed by social worker Sarah Bowers and Dr. Mitchell Langbart. Id. at 126-129. The statement indicates that Claimant exhibits diminished energy; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; persistent nonorganic disturbance of vision, speech, hearing, use, movement, and control of a limb, or sensation; change in personality; emotional withdrawal or isolation; impulsive and damaging behavior; impairment in impulse control; persistent disturbances of mood or affect; short and intermediate memory impairment; sleep disturbance; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on average at least once a week. Id. at 126. The statement further indicates that Claimant's "functional ability now may be aggravated by work stress." Id. at 127.

The statement also indicates that Claimant retains the mental abilities and aptitudes needed for unskilled work. Id. Specifically, Claimant had a very good ability to remember work-like procedures; understand, remember, and carry out very short and simple instructions; maintain

5

regular attendance; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being unduly distracted; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and be aware of normal hazards and take appropriate precautions. Id. The statement further indicates that Claimant's physical impairments supercede his mental health impairment with respect to his ability to do work and that Claimant's anxiety over having a seizure on public transportation prevents him from using said transportation. Id. The statement anticipates that Claimant could miss up to four days per month and that he could be off-task ten percent of the day as a result of his impairments. Id.

In addition to the medical opinions and Claimant's statements regarding his condition and abilities, statements were submitted by family members and friends who had observed Claimant's condition. Claimant's cousin, Regina Mascari Rivera, reported witnessing several of Claimant's seizures. Id. at 114. Ms. Mascari Rivera indicated that during seizures Claimant flops on the floor, foams at the mouth, and rolls his eyes to the back of his head. Id. Claimant's brother, Juan Claudio, stated that Claimant flops on the floor shaking, turns blue, foams at the mouth, makes noises, rolls his eyes to the back of his head, and urinates on himself. Id. at 117.

### B. Procedural History

Claimant filed applications for Title II Disability Insurance and Title XVII Supplemental Security Income on August 27, 2009, alleging a period of disability beginning on January 1, 2005.

Dkt. Nos. 9-5 at 2, 5; 9-6 at 7. Administrative Law Judge ("ALJ") Marie D. Greener denied the application. Dkt. No. 9-2 at 15. The Appeals Council denied Claimant's request for review on July 6, 2011, rendering ALJ Greener's decision the final decision of the Commissioner. Dkt. No. 9-2 at 2-5. The present appeal ensued.

## III. STANDARD OF REVIEW

### A. Scope of Review

A court reviewing the denial of a social security disability benefits claim may not decide *de novo* whether a claimant is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Miller v. Comm'r of Social Sec., 409 F. App'x 384, 386 (2d Cir. 2010). The reviewing court may determine only whether the decision below was based upon legal error or insubstantial evidence. Id.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). If the Commissioner's decision is supported by substantial evidence, a reviewing court must sustain it "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ . . . ." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992); see Knighton v. Astrue, 861 F. Supp. 2d 59, 63 (N.D.N.Y. 2012) ("Where the evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). The Court must afford the ALJ's determination considerable deference and "may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

Although factual determination are afforded a degree of deference, "[l]egal decisions are reviewed *de novo*, and '[w]here there is reasonable doubt as to whether the [hearing officer] applied the proper legal standards,' even if the ultimate decision may be 'arguably supported by substantial evidence,' the ... decision may not be affirmed." Butler v. Astrue, 926 F. Supp. 2d 466, 474 (N.D.N.Y. 2013) (quoting Whipple v. Astrue, No. 5:08-CV-1356, 2011 WL 1299352, at *5 (N.D.N.Y. Mar. 8, 2011)).

**B. Social Security Benefits**

A claimant is disabled for Social Security purposes if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Butler, 926 F. Supp. 2d at 474 (internal quotation marks and emphasis omitted). The Social Security regulations prescribe a five-step analysis to determine whether a claimant is disabled. See 20 C.F.R. § 416.920(a)(4)(i)-(v). On review, a court examines each of the Commissioner's findings of fact to determine if they were supported by substantial evidence.

The five-step analysis is sequential, meaning that the determination at each step dictates whether the analysis proceeds to the subsequent step. Gennardo v. Astrue, 333 F. App'x 609, 610 (2d Cir. 2009). The steps assess whether the claimant: (1) is currently working; (2) has a severe impairment, or combination of impairments, that satisfy the duration requirement of the statute; (3) has an impairment, or combination of impairments, listed in or medically equivalent to an impairment listed in Appendix 1 of the regulations; (4) is capable of continuing in her prior type of work; and (5) can do other work. Butler, 926 F. Supp. 2d at 474-75 (citing Green-Younger v.

8

Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)); see also Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002).

Throughout the first four steps, the burden of proof lies with a claimant. Butler, 926 F. Supp. 2d at 466. At the fifth step, however, the burden shifts to the Commissioner to show that "there is other gainful work in the national economy which the claimant could perform." Ortiz Torres v. Colvin, 2013 WL 1500470, at *6 (N.D.N.Y. Apr. 10, 2013) (citing Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002)).

## IV. DISCUSSION

ALJ Greener made the following findings of fact and conclusions of law. Claimant was insured through the Social Security Act through December 31, 2009. Dkt. No. 9-2 at 20. Claimant has not engaged in substantial gainful activity since September 6, 2006, and cannot be considered disabled prior to this date. Id. at 21. Claimant has a seizure disorder that qualifies as a severe impairment within the meaning of the Social Security regulations. Id. at 21-23. Claimant's impairment, or impairments, do not meet or medically equal one of the impairments listed in Appendix 1. Id. at 23-24. "Claimant has the residual functional capacity to perform a full range of work at all exertional levels that does not involve driving for business purposes, working at heights, or working with or near hazardous machinery or equipment (such as knives or saws)." Id. at 24. Claimant is unable to perform any past relevant work. Id. at 27. Claimant is 26 years old, meeting the definition of "younger individual" for the purposes of Social Security disability claims. Id. Claimant has limited education and is able to communicate in English. Id. In light of Claimant's age, education, work experience and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that Claimant can perform. Id. Finally, Claimant was not disabled from September 26, 2006, until February 17, 2010. Id. at 28.

Claimant contends that the Commissioner's decision erroneously denied him disability benefits because ALJ Greener's decision was based on legal error and was not supported by substantial evidence. Dkt. No. 14 at 2. The Court addresses the relevant steps of ALJ Greener's analysis in turn.

### A. Severe Impairment

ALJ Greener misapplied the legal standard governing whether Claimant's adjustment disorder is a severe impairment. At step two, an ALJ must determine whether a claimant's impairment meets the statutory requirement of severity and whether it has, or will, persist for the duration requirement. See 20 C.F.R. § 404.1520(a)(4)(ii). The severity requirement screens out only *de minimis* claims. See Parker-Grose v. Astrue, 462 F. App'x 16, 17 (2d Cir. 2012). A severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities is defined to mean the abilities and aptitudes necessary to do most jobs." Id. § 404.1521(b); see also Parker-Grose, 462 F. App'x at 17.

As a factual determination, an examiner's decision whether an impairment meets this standard is entitled to deference and is reviewed under the substantial evidence standard; however, whether the analysis has been properly conducted is a legal question to be reviewed *de novo*. Butler, 926 F. Supp. 2d at 474. Here, ALJ Greener: (1) incorrectly analyzed whether the duration requirement had been satisfied as a part of the severity determination; (2) misapplied the duration requirement; and (3) failed to fulfill her obligation to develop the factual record as to the severity of

Claimant's adjustment disorder. Because the resulting decision was the product of legal error, the case is remanded irrespective of whether it was supported by substantial evidence.

### 1. ALJ Applied Duration Requirement Concurrently with Severity Requirement

ALJ Greener improperly combined the severity and duration requirements of the second step. Step two "consider[s] the medical severity of [the claimant's] impairment(s). If [the claimant] do[es] not have a severe . . . physical or mental impairment that meets the duration requirement[1] . . . or a combination of impairments that is severe *and* meets the duration requirement, [an ALJ] will find that [a claimant is] not disabled." 20 C.F.R. § 404.1520(a)(4)(ii) (emphasis and footnote added). The severity and duration requirements are separate preconditions which must both be met for a claimant to be considered disabled.

While some courts have held that the duration requirement is to be applied at the third stage of the analysis,[2] rather than the second, there is no question that the duration requirement is a separate analysis, and not to be conducted in conjunction with the severity requirement. See id. § 404.1520(a)(4)(ii); see also Butler, 926 F. Supp. 2d at 474.

### 2. Misstatement of the Durational Requirement

ALJ Greener misstated and thus misapplied the duration requirement, amounting to legal error. The Social Security statute and regulations provide that disability is an inability "to engage in

---

[1] The duration requirement requires that, "[u]nless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

[2] The Butler court stated that the duration requirement is to be applied as part of the step three analysis. 926 F. Supp. 2d at 475. There is no practical difference between analyzing the duration component at the second or third step, provided the severity of the impairment is determined separately.

11

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted *or can be expected to last for a continuous period of not less than 12 months.*" 42 U.S.C. § 423(d)(1)(A) (emphasis added); 20 C.F.R. § 404.1509. In making her determination that Claimant's adjustment disorder was not a severe impairment, ALJ Greener stated that

> Claimant has an adjustment disorder associated with his physical condition with elements of depression and anxiety, but he did not seek treatment for it until August of 2009. *The medical evidence of record does not show that this impairment has been present for a continuous period of 12 months or more or is expected to cause the claimant's death.* Accordingly, even if severe, this impairment has not met the durational requirement of the Social Security Act.

Dkt. No. 9-2 at 22 (emphasis added). This is a misstatement of the duration requirement of the Social Security Act. The Act does not require that a claimant's impairment have persisted for a period in excess of a year; it is enough that the impairment can be *expected* to last for a year. Under this standard, Claimant could succeed if his adjustment disorder is expected to last for the required period of time.

### 3. *Duty of ALJ to Establish the Record*

Although a claimant has the burden of proof throughout the first four steps of the analysis, see Butler, 926 F. Supp. 2d at 474, the non-adversarial nature of Social Security disability proceedings impose a duty upon ALJs to assist in developing the record unless such efforts would be futile. See, e.g., Ubiles v. Astrue, No. 11-CV-6340, 2012 WL 2572772, at *8 (W.D.N.Y. 2012) ("[A]n ALJ may decline to seek additional records when he 'know[s] from past experience that the source either cannot or will not provide the necessary findings.'" (quoting 20 C.F.R. § 404.1512(e)(2))). "The failure to develop the record cannot be harmless error [where the ALJ] relied on perceived gaps in the medical evidence to find [a claimant] not disabled." Id. at *10.

12

The record here is sparse on whether Claimant's adjustment disorder was expected to persist for the requisite period, and ALJ Greener relied on that paucity in making her determination that Claimant's adjustment disorder is not severe.[3] See Dkt. No. 9-2 at 26. Claimant's failure to produce evidence of the duration of his impairment is not a sufficient basis for denying his claim in the absence of evidence that attempts to further develop the record would be or had been futile. Numerous exhibits were gathered from the physicians and facilities from which Claimant sought treatment, see generally Dkt. No. 9-7, including Dr. Wight, Dkt. No. 9-7 at 96-113, and ARISE, id. at 121-25, as noted by ALJ Greener. See generally Dkt. No. 9-2. As such, even if ALJ Greener's decision was based solely on the record, and not on the misapplication of the duration requirement, it was nonetheless the product of legal error.

Each of these errors is sufficient cause to remand the case for further determination. Due to the sequential nature of the analysis, a finding that an impairment is not severe removes it from further consideration. Thus, it is possible that Claimant's adjustment disorder, either singly or in conjunction with his seizure disorder, satisfies the requirements for disability. Although the Court cannot, particularly on the current record, find that Claimant's impairments, individually or in the aggregate, preclude him from "engag[ing] in any substantial gainful activity," Butler, 926 F. Supp. 2d at 474, Claimant's claims must be subjected to a full and fair analysis. See Martell v. Apfel, No. 99 CIV. 4985, 2000 WL 567012, at *3 (S.D.N.Y. 2000) ("[I]n deciding whether the Commissioner's findings are supported by substantial evidence . . . this Court must first determine

---

[3] Based on the medical source statement of Dr. Langbart and Sarah Bowers, dated January 4, 2011, Claimant's mental impairment may have persisted for well over a year. Dkt. No. 9-7 at 126.

13

whether [a claimant] has had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." (internal quotation marks and citation omitted)).

**B. Listed Impairment**

The third step of the analysis requires that an ALJ "consider the medical severity of [a claimant's] impairment(s)" to determine if "[a claimant's] . . . impairment(s) . . . meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement . . . ." 20 C.F.R. § 404.1520(a)(4)(iii). A claimant whose impairment meets or medically equals a listed impairment will be deemed disabled regardless of age, education, or work experience. Id. § 404.1520(d). Here, irrespective of her credibility determination, ALJ Greener's failure to consider whether the combined effect of Claimant's seizure and adjustment disorders created a level of impairment that "meets or equals" a listed condition is an error of law.

Multiple impairments may "meet[] or equal[]" the listings. Id. § 404.1520(a)(4)(iii). Moreover,

> [i]f [a claimant has] a combination of impairments, no one of which meets a listing . . . [an ALJ] will compare [those impairment] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that [the claimant's] combination of impairments is medically equivalent to that listing.

Id. § 404.1526(b)(3). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); see also Brown v. Apfel, 174 F.3d 59, 64 (2d Cir. 1999). Because ALJ Greener did not assess whether Claimant's combination of seizure and

14

adjustment disorders medically equal closely analogous listed impairments, this case is remanded on that basis as well.

### C. Residual Functional Capacity

Step four requires an ALJ to determine what vocational capacity a claimant retains. Butler, 926 F. Supp. 2d at 475. A claimant's residual functional capacity is determined by examining the claimant's own statements regarding her impairments, the observations of others who have familiarity with the claimant, and the observations of medical sources. See generally 20 C.F.R. § 416.929. If a claimant has the capacity to work, step five requires the examiner to determine whether a significant number of jobs exist in the national economy that the claimant may perform. ALJ Greener failed to address significant evidence that may have affected her credibility determination. Because the residual functional capacity is heavily dependent on the credibility determination, that decision is also remanded for reconsideration in light of the record as a whole.

*1. Credibility Determination*

"[T]he ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept . . . subjective complaints without question . . . [and] may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). Here, ALJ Greener determined that Claimant's subjective complaints were not credible. Claimant challenges this decision, alleging that it was not supported by substantial evidence. Because the case is remanded for reassessment of the step-two analysis and introduction of additional evidence, ALJ Greener must also reassess her credibility determination in light of the record as a whole. Setting aside the implications of the errors in the step-two analysis, even if no new evidence is presented, ALJ

Greener's failure to address evidence that tends to explain or mitigate the facts relied on in determining that Claimant was not credible is a failure to consider the totality of the circumstances; an error of law.

As a general rule, "[w]here the evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." Knighton v. Astrue, 861 F. Supp. 2d 59, 63 (N.D.N.Y. 2012). In the realm of credibility determinations, this proposition commands that

> it is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant. It is also true that [courts] show special deference to credibility determinations made by the ALJ, who had the opportunity to observe the witnesses' demeanor.

Tarsia v. Astrue, 418 Fed App'x 16, 19 (2d Cir. 2011) (internal quotation marks and citations omitted); see also Selian v. Astrue 708 F.3d 409, 420 (2d Cir. 2013) ("[A]n ALJ's credibility determination is generally entitled to deference on appeal.").

While a reviewing court may determine only whether a hearing examiner's decision is supported by substantial evidence, an ALJ "must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 404.953(a). As such, an ALJ's determination must take into account the totality of the circumstances. Flores v. Dep't of Health, Ed. & Welfare, 465 F. Supp. 317, 323 (S.D.N.Y. 1978) ("The test for disability is ... whether objectively and in the totality of circumstances, including especially [a claimant's] afflictions, he is disabled within the meaning of the Social Security Act.") (internal quotation marks and citation omitted). In light of the imperative that an ALJ's decision be based on the totality of the evidence, the failure to address significant mitigating evidence is a misapplication of that standard, amounting to legal error.

16

While it is not necessary that an ALJ incorporate each iota of relevant evidence into her rationale, a failure to address areas of significant concern may be grounds to determine that a decision was unsupported by substantial evidence where those omissions undermine the rationality of the conclusion. See Williams ex rel. Williams v. Bowen, 859 F.2d 255, 256 (2d Cir. 1988) ("[An ALJ's determination that a claimant is not disabled] must demonstrate a rational connection between the agency's legal conclusion and the medical and lay testimony presented. Only then can a reviewing court be assured that the evidence on which the administration determination rests is 'substantial.'").

*2. Residual Functional Capacity Determination*

Whether an ALJ finds a claimant to be credible will factor into the calculation of residual functional capacity. Thus, after reconsidering her credibility determination, ALJ Greener may also need to reconsider her determination of Claimant's residual functional capacity. Even if the credibility determination remains unaltered, however, ALJ Greener's application of the treating physician rule was improper.

Among the legal standards governing a disability determination is the treating physician rule, "which requires an ALJ to give a treating physician's opinion 'controlling weight' if the physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Brickhouse v. Astrue, 331 F. App'x 875, 877 (2d Cir. 2009)(citing 20 C.F.R. § 404.1527(d)(2)).

A treating source is "the claimant's 'own physician, psychologist, or other acceptable medical source who provides [a claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." Brickhouse, 331 F. App'x at 877

17

(quoting 20 C.F.R. § 404.1502). In determining whether a treating source is entitled to controlling weight, an ALJ must consider: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Id.

Here, ALJ Greener's decision to give "great evidentiary weight" to the findings and reports of "consulting examiner Dr. Boehlert . . . and treating physician Dr. Husain," Dkt. No. 9-2 at 26, was contrary to the treating physician rule. The record does not establish that Dr. Husain met with or treated Claimant. Claimant also asserts that "Dr. Boehlert was a one-time consultative examiner, and there is no indication that Dr. Boehlert reviewed Plaintiff's medical records," and that "Dr. Husain is a non-examining review physician, whose opinion is based on a fraction of the current record, consisting of about 18 pages . . . , including the consultative examination of Dr. Boehlert." Dkt. No. 14 at 20. Because the residual functional capacity determination gave unfounded weight to the evaluations of Drs. Husain and Boehlert, at the expense of that of Dr. Wight, the conclusion was the product of legal error. The case is therefore remanded on this basis as well.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's decision is **VACATED** and the case **REMANDED** for further proceedings consistent with this Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

DATED:     September 30, 2013
           Albany, NY

Lawrence E. Kahn
U.S. District Judge